UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:21-CV-00563-BJB-CHL

ROBBIE WRIGHT,                                                                                    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are the Parties' briefs regarding the scope of deposition testimony by the

corporate representative for State Farm Mutual Automobile Insurance Company ("State Farm").

(DN 27; DN 28; DN 31.)  Consistent with the Court's February 18, 2022 order (DN 25), this matter

is ripe for review.

I.        BACKGROUND

This case arises from a vehicle collision involving Plaintiff Robbie Wright ("Plaintiff")

and the Unknown Defendant that occurred on or around June 25, 2020.  (DN 1-1, at PageID # 9.)

Plaintiff claims that he entered an intersection while operating a motorized scooter and was struck

by the front side of Unknown Defendant's car.  (DN 27-1, at PageID # 207.)  Plaintiff alleges that

he sustained injuries as a result of the collision and incurred costs undergoing treatment.  (DN 1-

1, at PageID # 9–10.)  Plaintiff held an auto insurance policy issued by State Farm that was in

effect at the time of the collision.  (*Id.* at 10; DN 27-11.)  At some point Plaintiff reported the

collision to State Farm and retained counsel in connection with his claims for benefits.  On July

31, 2020, Plaintiff's counsel sent State Farm a notice of representation advising State Farm of

potential claims for personal injury protection ("PIP") and uninsured or underinsured motorist

benefits.  (DN 27-3.)  State Farm conducted an initial investigation, after which State Farm states

that it "made an internal referral to its Special Investigative Unit ("SIU") based on the presence of several indicators of potential fraud including the claimed damages being inconsistent with the facts of the loss, no police report being made, and discrepancies regarding the facts of the loss." (DN 27, at PageID # 188.)  On October 5, 2020, State Farm sent Plaintiff a reservation of rights letter, notifying him that they may have no duty to cover his losses under the policy.  (DN 27-7.)

State Farm continued to work with Plaintiff and his counsel to investigate the claims, including completing an examination under oath on March 3, 2021.  (DN 27-1.)  The investigation was still in process when Plaintiff filed suit in state court on June 28, 2021.  (*See* DN 1-1; DN 27, at PageID # 188.)  Plaintiff's initial complaint raised claims against the Unknown Defendant for negligence and against State Farm under the Kentucky Motor Vehicles Reparations Act, K.R.S. § 304.29-010 *et seq.* ("MVRA") for PIP benefits, uninsured or underinsured motorist benefits, and statutory interest attorney's fees as a statutory penalty for denying PIP benefits and under the Kentucky Unfair Claims Settlement Practices Act, K.R.S. § 304.12-230 ("KUCSPA") for bad faith.  (DN 1-1, at PageID # 9–11.)  On September 9, 2021, the case was removed to this Court, (DN 1), and on November 5, 2021, Plaintiff amended his complaint, withdrawing his KUCSPA bad faith claim.[1]  (DN 16.)

At some point when the case was pending in state court, Plaintiff served State Farm a notice of the deposition of State Farm's corporate representative that listed twenty-five Deposition Topics and eleven Document Requests.[2]  (DN 27-10.)  The Court conducted a telephonic status conference in this matter on February 18, 2022 during which the Parties advised the Court of a dispute

---

[1] Plaintiff maintains that he did not intend for his initial complaint to raise the bad faith claim.  (DN 10, at PageID # 112–113.)  *See* Part III.E. below.

[2] The notice, which State Farm filed with its brief, is undated and bears the state court case caption.  (DN 27-10, at PageID # 236.)

concerning the scope of the deposition notice.  (DN 25, at PageID # 181.)  Based on the discussion

during the status conference, the Court granted leave for the Parties to brief the issue.  (*Id.*)

## II.    LEGAL STANDARD

Rule 30 of the Federal Rules of Civil Procedure permits a party to "depose any person"

"by oral questions."  Fed. R. Civ. P. 30(a).  In such a deposition, "[t]he examination and cross-

examination of a deponent proceed as they would at trial under the Federal Rules of Evidence,

except Rules 103 and 615."  Fed. R. Civ. P. 30(c)(1).  For non-expert witnesses, generally, a

witness may only testify about matters as to which they have personal knowledge.  Fed. R. Evid.

602.  In the case of a corporate representative deposition pursuant to Fed. R. Civ. P. 30(b)(6), the

designated deponents "must testify about information known or reasonably available to the

organization."  Fed. R. Civ. P. 30(b)(6).  When a corporation is served with a notice of a Rule

30(b)(6) deposition, it is obligated to produce a witness or witnesses knowledgeable about the

subject or subjects described in the notice and to prepare the witness or witnesses to testify not

simply to their own knowledge, but the knowledge of the corporation.  *Pogue v. Northwestern*

*Mut. Life Ins. Co.*, No. No. 3:14-CV-598-CRS, 2017 WL 3044763, at *8 (W.D. Ky. July 18, 2017)

(citing *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2014 U.S. Dist. LEXIS

185334, at *12 (W.D. Ky. Apr. 2, 2014)).  A Rule 30(b)(6) designee must be educated and gain

the requested knowledge to the extent that it is reasonably available to the corporation.  *Id.*

Rule 26(b) governs the scope of discovery.  Fed. R. Civ. P. 26(b).  *See Dawkins v. Knight*

*Specialty Ins. Co.*, No. 1:20-CV-00091-GNS-HBB, 2021 WL 2346016, at *3 (W.D. Ky. June 8,

2021) ("Regardless of the form a discovery request may take, be it by deposition or in written

form, Rule 26 governs the scope.").  Rule 26(b)(1) provides that "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing *Chrysler v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).  In assessing whether a discovery request is proportional, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## III.    DISCUSSION

In its brief, State Farm indicates that it does not object to Deposition Topics 12, 15, 16, 17, 18, and 19 and Document Requests 2 and 11.  (DN 27, at PageID # 192, 199.)  Additionally, State Farm raises qualified objections to Deposition Topic 13 and Document Request 8.  (*Id.* at 199.) State Farm objects to the remaining topics and requests on grounds that they "are plainly not relevant to any party's claim or defense and are therefore improper areas of inquiry of a corporate representative in this case."  (*Id.* at 189.)  State Farm further argues that it "is entitled to assert the applicable attorney-client and work product privileges to limit the scope of Wright's deposition to only those facts that are relevant to the claims and defenses."  (*Id.* at 202.)

**A.   Relevance to Claims for Benefits Under the Auto Insurance Policy**

Plaintiff's amended complaint raises a claim for payment of PIP benefits provided under his policy.  (DN 16, at PageID # 129.)  The MVRA requires insurance companies to offer PIP benefits, also known as no-fault benefits or basic reparations benefits ("BRB"), with all policies they sell.  K.R.S. § 304.39-040(3).  Auto insurance companies must provide these benefits (up to $10,000) for injuries suffered in automobile accidents.  *Id.*  Here, State Farm does not contest that Plaintiff suffered injuries as a result of the collision.  Rather, State Farm argues that the collision does not constitute "injury arising out of maintenance or use of a motor vehicle" as defined by the statute if Plaintiff's scooter collided with a parked car, factual circumstances which are disputed. (DN 193, at PageID # 193.)

Plaintiff also raises claims for uninsured motorist ("UM") benefits and underinsured motorist ("UIM") benefits.  UM benefits cover damages caused by uninsured motor vehicles, as defined by statute.  K.R.S. § 304.20-020.  Auto insurers are required to offer UM benefits with all policies, at least in the amount of $25,000.00.  *Id.*; § 304.39-110.  UIM benefits cover damages caused by "a party with motor vehicle liability insurance coverage in an amount less than a judgment recovered against that party for damages on account of injury due to a motor vehicle accident."  K.R.S. § 304.39-320(1).  The MVRA requires insurers to make UIM coverage "available upon request to its insureds," but "subject to the terms and conditions of such coverage not inconsistent with this section."  K.R.S. § 304.39-320(2).  The Supreme Court of Kentucky has explained,

> the MVRA takes two strong positions on UIM coverage. First, UIM coverage is supplemental—insurers are not forced to offer it unless the insured requests this additional coverage. And second, insurers are free to contract with insureds on the form and scope of coverage, so long as the terms remain consistent with the remaining provisions of the MVRA.

5

*Phila. Indem. Ins. Co., Inc. v. Tryon*, 502 S.W.3d 585, 588 (Ky. 2016).  With respect to the claim for UM benefits, State Farm claims that its liability depends on disputed facts concerning whether the Unknown Defendant was uninsured and was at fault for causing the collision.  (*Id.* at 191–93.)  State Farm has not directly addressed the merits of Plaintiff's claim for UIM benefits in its pleadings or instant briefs.

State Farm also raises two affirmative defenses to coverage arising from Plaintiff's alleged non-compliance with the policy.  (DN 17, at PageID # 135; DN 27, at PageID # 196–99.)  First, State Farm asserts that Plaintiff failed to timely comply with the policy's notice provisions in reporting his claim and that whether this failure precludes recovery depends on disputed facts concerning whether State Farm was prejudiced by the delay.  (DN 27, at PageID # 196–98.)  Second, State Farm asserts that Plaintiff violated a policy provision voiding coverage in the event that the insured materially misrepresents facts concerning his claims during the claims process.  (*Id.* at 198–99.)  Below, the Court considers the topics and documents relevant to the foregoing claims and defenses.

### 1.  Auto Insurance Policy

Deposition Topic 13 is "The terms of Plaintiff's insurance policy"; Document Request 8 is for "Plaintiff's complete insurance policy and declarations page."  (DN 27-10, at PageID # 237, 240.)  State Farm raises qualified objections, arguing that discovery should be limited to "relevant provisions only."  (DN 27, at PageID # 199.)  According to State Farm, the terms of the policy are only relevant to the extent that State Farm relies on the notice and material misrepresentation provisions in its defense based on Plaintiff's failure to comply with these provisions.  The Court disagrees.  First, the terms of the policy are bear on the merits of Plaintiff's claims for benefits, which arise from State Farm's alleged breach of its duties under the policy.  State Farm denies

breaching its relevant obligations.  (DN 17, at PageID # 174.)  While State Farm emphasizes that it does not dispute that the policy provides for UM and PIP benefits—nor could it, as these benefits are mandated by statute—it has not stipulated UIM coverage under the policy.[3]  Moreover, the central issue in this case is not the type of benefits available under the policy, but rather the scope of State Farm's duties with respect to payment of benefits.  Plaintiff is entitled to inquire about State Farm's understanding of its duties under the policy and the facts upon which it relies in support of its contention that it complied with the full scope of its duties under the relevant provisions.  Second, the terms of the policy bear on State Farm's defense that Plaintiff's claims "may be barred, in whole or in part, by Plaintiff's failure to comply with his duties under State Farm's auto policy."  (DN 17, at PageID # 135.)  *Cf. Dawkins*, 2021 WL 2346016, at *3 ("Knight also concedes that Dawkins was insured for UM claims and has complied with the terms and conditions of the contract.").  Given the extent to which the terms of the policy are in dispute, the Court declines to draw lines to narrow the scope of inquiry regarding its terms, especially given that the policy is relatively simple and the entire document is only twenty pages in length.

### 2.  Claim File

Deposition Topic 14 is "Plaintiff's claim file with the Defendant Insurer."  (DN 27-10, at PageID # 237.)  State Farm indicates that it objects to Topic 14.  (DN 31, at PageID # 285.)  However, elsewhere, Plaintiff concedes that its corporate testimony "will require disclosure of facts and evidence contained in [Plaintiff]'s claims file generated prior to suit."  (DN 27, at PageID # 199.) (*See id.* at 195) (conceding that Plaintiff is entitled to discover "what evidence the insurer relied upon to delay or deny payment of PIP benefits").  Further, State Farm concedes that "claim

---

[3] The Kentucky Supreme Court has repeatedly affirmed that a UIM action is a breach of contract action. *See, e.g., Ky. Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797, 801 (Ky. 2005); *State Farm Mut. Auto. Ins. Co. v. Riggs*, 484 S.W.3d 724, 727 (Ky. 2016).

file materials" as requested through Document Request 11 are discoverable as relevant to Plaintiff's UM claim. (*Id.* at 192.) Subject to meritorious privilege claims, Plaintiff's claims file is within the proper scope of discovery. *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-CV-00034-R, 2012 WL 692668, at *3 (W.D. Ky. Mar. 2, 2012) ("For discovery requests in first-party cases, because the insurance file is created on behalf of the insured, the entire file is typically discoverable by the plaintiff.").

### 3.  Plaintiff's Relationship and Claims History with State Farm

Deposition Topic 11 is "Plaintiff's relationship and history with [t]he Defendant Insurer's including all policies issued to or for the benefit of Plaintiff, Plaintiff's payment history, and all of Plaintiff's previous or subsequent claims." (DN 27-10, at PageID # 237.) Document Request 7 is for "All documents, electronically stored information, or any other information pertaining to Plaintiff's relationship and history with The Defendant Insurer including all policies issued to or for the benefit of Plaintiff, Plaintiff's payment history, and all of Plaintiff's previous or subsequent claims; (and any attachments referenced therein) identified in response to this Notice or already produced." (*Id.* at 240.) Plaintiff asserts that this information is relevant to potential defenses to coverage. (DN 28, at PageID # 269.) Plaintiff states, "For example, it is foreseeable State Farm could deny part or all of Plaintiff's claims because of because of his claims history." (*Id.*) Plaintiff argues that he "must be allowed to explore this possibility." (*Id.*) State Farm counters that it "is not asserting any defense that [Plaintiff]'s claim history somehow caused or contributed to State Farm's decision to investigate and delay consideration of his UM and PIP claims." (DN 31, at PageID # 284.) This statement is consistent with State Farm's answer to Plaintiff's amended complaint. The Court finds that unrelated policies and claims do not bear on the application of the

policy terms nor whether the Parties complied with their respective obligations in handling the benefits in dispute.

### 4.  Plaintiff's Injuries and Damages

Deposition Topic 20 is "The Defendant Insurer's position regarding Plaintiff's injuries and damages"; Topic 21 is "The Defendant Insurer's position regarding the medical treatment, billing, and reputation of Plaintiff's medical providers"; Topic 22 is "Any and all details related to any investigation, whether ongoing or concluded, within the last ten (10) years of any of Plaintiff's medical providers"; Topic 23 is "Any internal practice, policy, position, procedure, or custom related to any of the Plaintiff's medical providers."  (DN 27-10, at PageID # 238.)

State Farm argues that discovery concerning its position on Plaintiff's injuries is not relevant to issues in dispute because it "is not contesting that [Plaintiff] sustained significant damages as a result of the incident given that he sustained two leg fractures requiring surgery and incurred nearly $150,000 in damages."  (DN 27, at PageID # 193.)  Plaintiff asserts that "[a] common defense in personal injury claims is that the medical provider overbilled for treatment or unrelated treatment."  (DN 28, at PageID # 269.)  For this reason, Plaintiff argues that he "certainly has a right to know if or which of Plaintiff's bills and treatment are specifically disputed or if the Defendant intends to argue that the medical provider is not reputable or credible."  (*Id.*)  State Farm cites *Dawkins v. Knight Specialty Ins. Co.*, in which this Court substantially limited the scope of a corporate deposition when the insurer was "not contesting coverage, liability, causation and amount of medical expenses."  2021 WL 2346016, at *3.  While the deposition notice in dispute and the parties' arguments in *Dawkins* were similar to those presented here, this case differs from *Dawkins* in important ways.  First, in *Dawkins*, the plaintiff's sole claim was for UM benefits, and the only issue in dispute was the amount of damages.  *Id.* at *1.  Liability was not at issue because the insurer admitted that the plaintiff "was insured for UM claims and has complied with the terms

and conditions of the contract" and "concede[d] the fault of the other driver and d[id] not contend that [the plaintiff] bears comparative fault or failed to mitigate her damages." *Id.* at *3. These stipulations had been established through the insurer's responses to discovery requests. *Id.* Here, State Farm denies that any coverage provision applies due to disputed facts concerning how the accident transpired. Additionally, State Farm's coverage defense based on Plaintiff's alleged material misrepresentations depends on similar disputed facts as well as the nature of any communication between Plaintiff and State Farm in connection with the claim. Further, unlike the insurer in *Dawkins*, State Farm also raises a defense based on "Plaintiff's failure to mitigate his damages, any comparative fault in causing any accident, and the terms and provisions of the Kentucky Motor Vehicle Reparations Act." (DN 17, at PageID # 135.) To the extent that State Farm claims to agree to certain aspects of causation and damages, there is no binding admission or stipulation in the record removing these issues from dispute. Moreover, even if the issues presented were sufficiently narrow to obviate the need for discovery concerning the nature and extent of Plaintiff's injuries and damages, *Dawkins* does not undermine the relevance of Topic 20. Upon concluding that many "essential facts" were not in dispute, the Court in *Dawkins* enumerated each of the plaintiff's noticed deposition topics that were rendered irrelevant. 2021 WL 2346016, at *3. The deposition topic concerning the insurer's "position regarding Plaintiff's injuries and damages" was not among them. *See id.*

If State Farm truly does not dispute any facts related to Plaintiff's injuries and damages, it should provide testimony or an admission confirming this position. State Farm's corporate testimony concerning its position on Plaintiff's injuries and damages could establish that discovery concerning Plaintiff's medical treatment and providers covered by Topics 21, 22, and 23 has little or no importance to the issues in dispute. Indeed, Defendant addresses the relevance of these

topics together with Topic 20.  (DN 31, at PageID # 285.)    Accordingly, the Court will limit the scope of inquiry to Topic 20.  If discovery reveals that information within Topics 21, 22, and 23 is potentially relevant, the court will then consider whether to permit broader discovery.

### B. Relevance to Statutory Claims Under the MVRA

The MVRA provides that overdue PIP payments bear interest at a rate of 12%, but if the delay was without a "reasonable foundation" the rate is 18%.  K.R.S. § 304.39-210(2).  It also allows courts to award reasonable attorneys' fees on the same grounds.  K.R.S. § 304.39-220(1).  Plaintiff raises claims under these provisions for 18% interest and attorneys' fees based on State Farms alleged unreasonable denial of PIP benefits.  (DN 16, at PageID # 129.)

#### 1. Evidentiary Standard

Plaintiff seeks to discover broad categories of information concerning State Farm's internal standards, policies, and procedures outside the context of its handling of Plaintiff's claim.  (DN 27-10.)  State Farm contends that such information is outside the scope of relevant discovery because Plaintiff has abandoned his KUCSPA bad faith claim, whereas Plaintiff argues that the information is relevant to his claims for 18% interest and attorney's fees under the MVRA.  Plaintiff's position, though he did not explicitly articulate it in his brief, implies that the standard for determining whether an insurer acted in bad faith is similar to or overlaps the standard for determining whether an insurer acted without a "reasonable foundation" under the MVRA.  In its response brief, State Farm addresses this point.

> Kentucky law permits the discovery of claim handling policies and procedures *in bad faith cases* to determine whether the insurer's "own policies, as described in the manuals, embody or encourage *bad faith practices*." This is in part because the second and third elements of a statutory or common law bad faith claim under Kentucky law are whether the insurer "lacked a reasonable basis in law and fact for denying the claim" and whether the insured either

knew that there was no reasonable basis or acted with reckless disregard for whether such a basis existed.

Here, it is undisputed that [Plaintiff] does not have a current claim for bad faith against State Farm.

. . .

[Plaintiff] [] contends that a determination as to whether State Farm's denial was "reasonable" is relevant because [Plaintiff]'s claim for statutory penalties for failure to pay PIP which include additional interest at 18% and attorney fees if the denial or delay of PIP benefits was "without reasonable foundation." KRS 304.39-210(2) and 220(1). This argument misconstrues what evidence a jury would consider in determining whether State Farm's delay in paying PIP benefits in the case at hand was without "reasonable foundation." As set forth in State Farm's initial Brief, the cases cited by State Farm looked to the specific *facts* of the individual case if the insurer had a "reasonable foundation" – not the institutional claim handling practices or procedures of the insurer. [Plaintiff] cites to no decision supporting that bad faith discovery may proceed under a claim for these statutory penalties. Indeed, Kentucky law specifically precludes a bad faith claim for failure to pay PIP.

(DN 31, at PageID # 280–81) (emphases in original) (internal footnotes and citations omitted).

One commentator has observed that cases applying relevant provisions of the MVRA "have provided no clear guidelines as to what conduct is 'reasonable' and what is not." 11 Robert D. Monfort, KY. MOTOR VEHICLE INS. L. § 14 (2021–2022 ed.).  This Memorandum Opinion and Order takes no position on the legal standard that should govern State Farm's liability for failure to timely pay PIP benefits, and nothing herein should be so construed.  Nonetheless, the Court finds that an insurer's institutional standards, policies, and procedures may be probative of whether an insurer denied PIP benefits without a reasonable foundation under the MVRA.

First, State Farm correctly notes that common law bad faith claims for failure to pay PIP benefits are barred in Kentucky, but it ignores the reason why this is the case.  Under Kentucky law, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb*

*v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Consistent with that principle, the Kentucky Supreme Court found that the MVRA "provides an exclusive remedy where an insurance company wrongfully delays or denies payment of no-fault benefits." *Foster v. Ky. Farm Bureau Mutual Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006). Thus, bad faith claims are barred for denials of PIP benefits because the MVRA affords relief for the same type of insurer conduct. Hair splitting aside, there is little apparent difference between bad faith denials that "lacked a reasonable basis in law and fact for denying the claim," *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), and denials that lacked a "reasonable foundation," which "is defined as either the 'assertion of a legitimate and bona fide defense by the reparation obligor' or . . . failure of the claimant to supply the obligor with reasonable proof of loss in a timely fashion." *Risner v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 14-41-HRW, 2015 WL 3857092, at *3 (E.D. Ky. June 22, 2015) (quoting *Auto. Club Ins. Co. v. Lainhart*, 609 S.W.2d 692, 694 (Ky. Ct. App. 1980)). Indeed, courts applying Kentucky law continually highlight the overlap between bad faith conduct and PIP denials that lack a "reasonable foundation" under the MVRA. *See, e.g., Irvin v. State Farm Mut. Auto. Ins. Co.*, No. 3:19-CV-690-CHB, 2020 WL 4004808, at *7 (W.D. Ky. July 15, 2020), *aff'd*, 861 F. App'x 65 (6th Cir. 2021) (stating that, in some circumstances, common law bad faith "provides additional guidance on what constitutes a 'reasonable foundation' "); *Mitchell v. State Auto Prop. & Cas. Ins. Co.*, No. 2004-CA-002239-MR, 2007 WL 1575318, at *3 (Ky. Ct. App. June 1, 2007) (finding that "the MVRA affords the exclusive remedy for an insurance company's *bad faith* delay or denial of claims for basic reparation benefits") (emphasis added); *Couch v. Northland Ins. Co.*, No. CIV 06-330-REW, 2007 WL 1610185, at *5 (E.D. Ky. May 31, 2007) ("The interest rate is 18% per annum if the delay in payment was without reasonable foundation, which introduces a quasi-bad faith component."); *Hartley v. GEICO Cas. Co.*, No. 2003-CA-

13

001134-MR, 2006 WL 2786929, at *3 (Ky. Ct. App. Sept. 29, 2006) (citing *Allen v. Safe Auto Ins. Co.*, 332 F. Supp. 2d 1044 (W.D. Ky. 2004)) ("[T]he U.S. District Court for the Western District of Kentucky has also held that a plaintiff's claim for basic reparation benefits under Kentucky's MVRA subsumed his claim for bad faith.").

Despite the recognized overlap between bad faith benefits denials and denials that lacked a "reasonable foundation" under the MVRA, State Farm argues for a distinction between their respective standards of proof.  Specifically, State Farm asserts that "the determination of whether an insurance company or an insurer has a 'reasonable foundation' for failing to timely pay PIP is based on the specific facts of each claim and what evidence the insurer relied upon to delay or deny payment of PIP benefits."  (DN 27, at PageID # 195.)  State Farm cites several cases in which courts applying the pertinent provisions of the MVRA purportedly relied exclusively on the facts of the plaintiff's claim rather than the insurer's institutional policies.  (*Id.* at 195–96.)  The Court has reviewed these cases and finds that none impose the kind of limitation that State Farm suggests; none addressed the admissibility of institutional evidence to determine whether a PIP denial lacked a "reasonable foundation" under the MVRA, much less its discoverability.  *See Irvin v. State Farm Mut. Auto. Ins. Co.*, 861 F. App'x 65 (6th Cir. 2021); *Grange Prop. & Cas. Ins. Co. v. Chappell*, No. 2017-CA-001418-MR, 2019 Ky. App. Unpub. LEXIS 103 (Ky. Ct. App. Feb. 15, 2019); *Shelter Mut. Ins. Co. v. Askew*, 701 S.W.2d 139 (Ky. Ct. App. 1985); *Ayers v. Duckworth*, No. 2007-CA-000295-MR, 2008 Ky. App. Unpub. LEXIS 692, at *10 (Ky. Ct. App. May 23, 2008). In fact, *Irvin* contradicts State Farm's position.  In *Irvin*, an insurer had denied the plaintiffs' PIP claims based on the recommendation of medical professionals who had conducted a paper review of the plaintiffs' medical records and concluded that their claimed treatment was unnecessary.  861 F. App'x at 66.  The issue presented was whether the insurer's denial was one "without a

14

reasonable foundation" given that the Kentucky Supreme Court in *Gov't Emps. Ins. Co. v. Sanders*, 569 S.W.3d 923, 928 (Ky. 2018) had found that the MVRA prohibits insurers from denying PIP claims based solely on paper reviews.  *Id.*  In its analysis, the Sixth Circuit did not address the facts giving rise to the plaintiffs' PIP claims nor the evidence relied upon by the insurer in denying the claims.  Instead, the court analyzed, among other things, the scope of the holding in *Sanders* and compared the paper review process that the Kentucky Supreme Court invalidated with the review process at issue:

> [In *Sanders*, the] paper-review process had other flaws, such as these: It used physicians unlicensed in Kentucky, employed surgeons to review therapy claims, and failed to provide adequate credentials for the reviewing physicians. *Sanders*, 569 S.W.3d at 927. None of these defects exists here. Absent any reasoning on this score, *Sanders* offers no handhold for showing that State Farm acted unreasonably.

*Id.* 67–68.

As *Irvin* illustrates, an insurer's standards, policies, and procedures may bear on whether denials of first-party PIP claims lacked a reasonable foundation.  Thus, on an MVRA claim alleging that an insurer denied PIP benefits "without reasonable foundation," they are subject to discovery.  Here, the pertinent issue is whether the standards, policies, and procedures covered by Plaintiff's deposition notice could have affected State Farm's decision to withhold payment for Plaintiff's PIP claim, and if so, whether discovery concerning the standards, policies, and procedures is proportional to the needs of the case.[4]  The Court addresses this issue below.

---

[4] The Court notes that State Farm only briefed the issue of relevance and has not presented any argument for limiting the scope of its corporate deposition on proportionality grounds.  While briefing on the issue of proportionality would have been helpful, it is appropriate for the Court to consider the issue in its absence.  Indeed, under Rule 26(b), it is "the power—and *duty*—of the district courts actively to manage discovery and to limit discovery that exceeds its proportional and proper bounds."  *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 274 (6th Cir. 2021) (quoting *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016)) (emphasis in original).

## 2. Claims Handling Standards

Deposition Topic 8 is "The Defendant Insurer's standards for good faith insurance claims handling"; Topic 9 is "The Defendant Insurer's knowledge of and familiarity with insurance industry standards for good faith insurance claims handling"; Topic 10 is "The Defendant Insurer's knowledge of and familiarity with Kentucky's standards for good faith insurance claims handling." (DN 27-10, at PageID # 237.)

As discussed in Part III.B.1. above, State Farm's institutional standards, policies and procedures may bear on Plaintiff's claims under the MVRA for denial of PIP benefits "without reasonable foundation." Here, State Farms standards for handling claims in good faith sought by Topic 8 would reveal whether the standards "embody or encourage bad faith practices." *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 813 (Ky. 2004), *as modified* (Dec. 1, 2004). However, the relevance of State Farm's claims handling standards is limited to those that could have impacted the handling of Plaintiff's PIP claim. *Austin-Conrad v. Reliance Standard Life Ins. Co.*, No. CV 4:10-CV-00127-JHM, 2015 WL 4464103, at *6 (W.D. Ky. July 21, 2015) (insurer's compensation of third-party medical examiners was discoverable because it would be helpful "if the decision makers relied on opinions or reports which may have been unduly influenced by financial incentives"); *Scott-Warren v. Liberty Life Assur. Co.*, Civ. A. No. 3:14-CV-738-CRS-CHL, 2016 WL 3876660, at *8 (W.D. Ky. July 30, 2016) (permitting discovery of materials that were actually utilized by the particular claims unit in processing the plaintiff's claim and materials that were utilized by or available to that unit in processing other individuals' claims); *Foster v. Am. Fire & Cas. Co.*, No. 5:13-CV-426-GFVT-REW, 2016 WL 8135350, at *10 (E.D. Ky. Apr. 1, 2016) (limiting discovery in a bad faith case arising out of a 2008 UIM claim to "manuals, handbooks, and other claims handling materials applicable to Kentucky bodily injury/UIM claims

in effect from 2007 through 2015"). Topic 8 does not meet that standard because it is not limited to those claims handling standards that could have impacted the handling of Plaintiff's PIP claim. Only the reasonableness of those denials is at issue, and Plaintiff has not explained why standards for handling other types of claims would shed light on the reasonableness of State Farm's handling of his PIP claim. The Court finds that the scope of inquiry within Topic 8 is limited to standards for good faith claims handling applicable to Kentucky PIP claims in effect since 2019.

State Farm's knowledge of the pertinent industry standards sought by Topic 9 bears on whether State Farm denied Plaintiff's PIP claim because of a bona fide defense to coverage. *See Irvin*, 2020 WL 4004808, at *7 (citing *Lainhart*, 609 S.W.2d at 695)). Additionally, State Farm's knowledge of Kentucky's standards bears on whether it "lacked a reasonable foundation for denying a claim [by] ignore[ing] Kentucky Supreme Court caselaw directly contradicting [its] argument." *Id.* However, the relevance of State Farm's knowledge of industry and state standards is limited to knowledge that could have impacted the handling of Plaintiff's PIP claim. Thus, Topics 9 and 10 are overbroad because they are not limited to the knowledge available to the individuals involved in handling Plaintiff's PIP claim. Plaintiff argues that relevance is not limited to PIP claims because "State Farm has a contractual and legal duty to adjust Plaintiff's claims in good faith, both the UM/UIM and BRB claims." (DN 28, at PAgeID # 268.) Because Plaintiff does not allege bad faith for the denial of his UM and UIM claims, State Farm's standards for handling such claims are not at issue. Plaintiff suggests that bad faith discovery should nonetheless be permitted because "[e]very contract in the Commonwealth of Kentucky carries with it an implied duty of good faith and dealing." (*Id.* at 269 n.1). This does not change the fact that Plaintiff's amended complaint does not put State Farm's purported duty of good faith with respect to the UM and UIM claims at issue. Plaintiff has provided no explanation for how State Farm's

UM and UIM claims handling standards would bear on his contractual claims for benefits or his claim that the denial of PIP benefits lacked a reasonable foundation.   Therefore, the Court finds that the scope of inquiry within Topics 9 and 10 is limited to knowledge or familiarity with insurance industry standards for good faith claims handling of Kentucky PIP claims by individuals that were involved with handling Plaintiff's PIP claim.

### 3.   Economic Incentives

Deposition Topic 4 is "The Defendant Insurer's business and/or corporate structure"; Topic 5 is "The Defendant Insurer's business model and revenue generating procedures and/or efforts"; Topic 6 is "The Defendant Insurer's pecuniary interest in the adjustment of claims and how this affects the Defendant Insurer's profitability"; Topic 24 is "An explanation of the existence of and the criteria for any bonus and/or incentive plan (however named or denominated) for The Defendant Insurer's employees in the claims department." (DN 27-10, at PageID 237–38.) Document Request 6 is for "All documents, electronically stored information, or any other information pertaining to Defendant's revenue generating procedures related to first-party, personal injury automobile claims (and any attachments referenced therein) identified in response to this Notice or already produced."  (*Id.* at 239.)

Plaintiff argues,

> As an insurance company, it cannot be disputed that State Farm generates revenue by collecting more in premiums then they pay out in claims. State Farm has a self-interest in paying out the least it can in claims. This financial interest would without a doubt create a bias on State Farm's part. For example, it is conceivable that an adjuster at State Farm is paid a bonus for either denying or delaying the payment of a claim. This information would go directly to the factual analysis of whether or not State Farm's BRB denial was reasonable.

(DN 28, at PageID # 268.)

In response, State Farm argues that this information is not relevant because Plaintiff does not raise a claim for bad faith.  (DN 31, at PageID # 283.)  As discussed in Part III.B.1. above, State Farm's policies and procedures may bear on Plaintiff's claims under the MVRA for denial of PIP benefits "without reasonable foundation."  This includes policies or procedures that tend to create a conflict of interest in handling PIP claims. *Trude*, 151 S.W.3d at 815 (permitting discovery of on whether insurer's compensation practices "keyed to obtaining low settlements, which in turn might encourage bad faith practices by adjusters and other employees"); *Austin-Conrad*, 2015 WL 4464103, at *6 ("Austin–Conrad seeks discovery of whether there is any incentive, bonus or reward program or system, formal or informal, for any employee involved in reviewing disability claims. This is a topic recognized as relevant to the issue of bias and therefore discoverable.").  However, the relevance of corporate financial policies or procedures is limited to those that could have impacted the handling of Plaintiff's PIP claim. *Austin-Conrad*, 2015 WL 4464103, at *6; *Scott-Warren*, 2016 WL 3876660, at *8; *Foster*, 2016 WL 8135350, at *10.  Topic 4 does not meet this standard because there is no logical nexus between State Farm's business and corporate structure and the handling of Plaintiff's claims.[5]  Similarly, Topic 6 does not meet this standard because Plaintiff provides no explanation for how State Farm's corporate interests could have affected the decisions of the employees involved in handling Plaintiff's claims.  Therefore, Topics 4 and 6 are outside the scope of State Farm's Rule 30(b)(6) deposition.  On the other hand, the remaining items could cover policies that impacted the handling of Plaintiff's PIP claim, but most responsive information would likely be irrelevant.  Therefore, Topics 5 and 24 and Request 6 are overbroad.  The Court finds the scope of inquiry within Topic 5 and production within Request 6

---

[5] Plaintiff argues that because State Farm is "a Defendant in this case, the Plaintiff has the right to information relative to the corporate structure of the Defendant." (DN 28, at PageID # 268.)  In response, State Farm argues that "[m]erely because State Farm is a named defendant, of course, does not make information regarding its corporate structure relevant to any claim or defense."  The Court agrees.

is limited to revenue generating procedures or efforts applicable to Kentucky PIP claims in effect since 2019 and that the scope of inquiry within Topic 24 is limited to criteria for bonuses or incentives applicable to Kentucky PIP claims handling in effect since 2019.

### 4. Adjuster Qualifications

Deposition Topic 3 is "Medical training or education expected of or provided to the Defendant Insurer's adjusters for purposes of investigating, analyzing and evaluating a claim for pain and suffering"; Topic 25 is "The names, titles and authority levels of any and all individuals who adjusted the Plaintiff's insurance claim(s)"; Document Request 4 is for "All documents, electronically stored information, or any other information pertaining to Defendant's training or education of adjusters (and any attachments referenced therein) identified in response to this Notice or already produced"; Request 5 is for "All documents, electronically stored information, or any other information pertaining to Defendant's medical training or education of adjusters (and any attachments referenced therein) identified in response to this Notice or already produced." (DN 27-10, at PageID # 237–39.)

With respect to Topic 25, Plaintiff argues that "[t]he qualifications of the adjusters and any possible financial bias he/she may have speaks directly to the credibility of the individual . . . ." (DN 28, at PageID # 269.)  In its response brief, State Farm incorrectly asserts that Plaintiff did not address the relevance of Topic 25, and as a result, State Farm does not counter Plaintiff's argument.  (DN 31, at PageID # 285.)  Generally, adjuster personnel information may be relevant to an issue whether the adjuster acted improperly in handling a particular claim.  *Trude*, 151 S.W.3d at 815.  This Court has repeatedly permitted discovery identifying adjusters and disclosing their personnel information related to job performance in this context, as long as the requests are limited to the individual adjusters that were responsible for handling the plaintiff's claim.  *Meador v. Ind. Ins. Co.*, No. 1:05-CV-00206-TBR, 2006 WL 8457433, at *7 (W.D. Ky. May 12, 2006);

*Jones v. Liberty Mut. Fire Ins. Co.*, No. CIV.A. 3:04-CV-137-MO, 2008 WL 490584, at *3 (W.D. Ky. Feb. 20, 2008); *Shaheen*, 2012 WL 692668, at *8.  Here, Topic 25 meets that standard. Therefore, the Court finds that Topic 25 is within the scope of State Farm's Rule 30(b)(6) deposition.

With respect to Topic 3, State Farm argues that the medical training or education of its adjusters is not relevant because it "has not declined to pay Wright's claims based on any medical causation issue or medical determination by claims personnel."  (DN 31, at PageID # 282.) Plaintiff argues that the information "would be directly related to how the claim is evaluated" and that "if State Farm has denied the claim because an adjuster believes the injuries could not have been caused from the incident as described then Plaintiff has a right to inquire of the training and education of the individual(s) making such a decision." (DN 28, at PageID # 268.)  Based on this, Plaintiff argues that "discovery on this subject could easily lead to admissible information."  (*Id.*) As State Farm correctly notes, Plaintiff does not articulate the proper standard under Rule 26(b).[6] In 2015, Rule 26 of the Federal Rules of Civil Procedure was amended to require that all discovery be "proportional" in nature.  The old rule permitted discovery of any information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (2010).  The new rule permits discovery only of information "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Here, there is no indication that any adjuster involved relied on a medical opinion in handling any part of Plaintiff's claim.  Thus, although Topic 3 concerns adjuster job related personnel information, the importance of adjusters' medical training or education to Plaintiff's claim for unreasonable PIP denial is speculative.

_____

[6] Elsewhere in his brief, Plaintiff argues that the scope of the deposition notice is proper because he "has provided a good faith explanation as to why the information requested is reasonably calculated to lead to admissible evidence in his claim for benefits against State Farm."  (DN 28, at PageID # at 270.)

Therefore, the Court finds that the testimony sought by Topic 3 and document production sought by Requests 4 and 5 would be disproportional to the needs of the case and outside the scope of discovery.  If discovery reveals that information within Topic 3 and Requests 4 and 5 is more important, the court will then consider whether to permit broader discovery.

### 5.   UM/UIM Standards and Policies

Deposition Topic 1 is "The Defendant Insurer's policies, procedures, or protocols for identifying, analyzing, adjusting, reserving and settling first-party uninsured/underinsured insurance claims"; Topic 2 is "Training or education of the Defendant Insurer's adjusters, including all individuals involved in the adjustment of the instant claim, to identify and handle first-party uninsured/underinsured insurance claims"; Topic 7 is "The Defendant Insurer's standards for uninsured/underinsured insurance claims handling."  (DN 27-10, at PageID # 236–37.)

Plaintiff argues that, "[s]ince State Farm has denied Plaintiff's claim for both UM/UIM benefits and BRB benefits, it is important for Plaintiff to conduct discovery on the basis of the denials, especially the reasonableness of the denial of BRB benefits."  (DN 28, at PageID # 267.)  As discussed in Part III.B.1. above, State Farm's policies and procedures may bear on Plaintiff's claims under the MVRA for denial of PIP benefits "without reasonable foundation."  However, each of the above topics covers policies related to UM and UIM claims; none references PIP benefits.  Because Plaintiff does not allege bad faith for the denial of his UM and UIM claims, the reasonableness of those denials is not at issue, and Plaintiff has not explained why these policies would shed light on the reasonableness of State Farm's handling of his PIP claim.  Therefore, Topics 1, 2, and 7 are outside the permissible scope of State Farm's 30(b)(6) deposition.

### C.  Remaining Document Requests

Document Request 1 is for "The curriculum vitae(s) of any and all witnesses it designates to testify on behalf of Defendant on the topics identified herein."  (DN 27-10, at PageID # 239.)  State Farm indicates that it objects to Request 1.  (DN 31, at PageID # 285.)  However, it does not provide any argument or explanation for its objection.  When a corporation is served with a notice of a Rule 30(b)(6) deposition, it is obligated to produce a witness or witnesses knowledgeable about the subject or subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of the corporation.  *Pogue*, 2017 WL 3044763, at *8 (citing *Janko*, 2014 U.S. Dist. LEXIS 185334 at *12).  Producing a curriculum vitae is a reasonable way to ensure that a Rule 30(b)(6) deponent was appropriately designated and prepared to testify as to matters within the scope of the deposition.  Absent any explanation by State Farm, for example that the Rule 30 designees do not maintain such documents, the Court sees no reason why it should not be required to produce its corporate deponents' curricula vitae.

Document Request 3 is for "All documents, electronically stored information, or any other information pertaining to Defendant's policies and/or procedures (and any attachments referenced therein) identified in response to this Notice or already produced."  (DN 27-10, at PageID # 239.)  Request 3 encompasses the various Deposition Topics discussed in Part III.B above.  For the reasons stated therein, production within Request 3 is limited to policies and procedures within the scope of State Farm's Rule 30(b)(6) deposition as defined by this Memorandum Opinion and Order.

Document Request 9 is for "All documents, electronically stored information, or any other information pertaining to correspondence to any named party in this case (and any attachments referenced therein) identified in response to this Notice or already produced."  (DN 27-10, at PageID # 240.)  Request 10 is for "All documents, electronically stored information, or any other

information pertaining to correspondence any non-named party in this case (and any attachments referenced therein) identified in response to this Notice or already produced." (*Id.*) State Farm indicates that it objects to Requests 9 and 10. (DN 31, at PageID # 285.) However, it does not provide any argument or explanation for its objection. Plaintiff does not address these requests in his brief. Rule 34 governs requests for production of documents. Fed. R. Civ. P. 34. *See* Fed. R. Civ. P. 30(b)(2) (A deposition "notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition."). Rule 34(b)(1)(A) demands that a requesting party "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). "The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." *Locke v. Swift Transp. Co. of Ariz., LLC*, No. 5:18-CV-119, 2019 WL 430930, at *2 (W.D. Ky. Feb. 4, 2019). Here, Requests 9 and 10 seek all documents "pertaining to correspondence to . . . any named . . . [and] non-named party in this case . . . ." (DN 27-10, at PageID # 240.) The requests are not limited in time, scope, or subject matter and give State Farm no reasonable notice of the particular responsive documents Plaintiff seeks. "[S]uch a far-reaching request is inherently disproportionate to the needs of discovery under Rule 26(b)(1) as the burden of complying with this nebulous discovery request far outweighs any speculative benefits." *Xact Assocs., LLC v. York*, No. 5:21-CV-00148-DCR-MAS, 2022 WL 468178, at *2 (E.D. Ky. Feb. 15, 2022).

### D. Privilege and Work-Product Protection

State Farm dedicates a section of its brief to claiming privilege and work product protection. (DN 27, at PageID # 199–201.) Specifically, State Farm argues that it is not required to disclose: (1) "communications between State Farm and retained counsel"; and (2) "certain materials in the claim file generated after litigation could be reasonably anticipated including, but

24

not limited to, communications by and between claims personnel and State Farm's internal analysis of [Plaintiff]'s claims." (*Id.* at 199–200.) With respect to the second category, State Farm recognizes that its corporate deposition will require disclosure of information in Plaintiff's claims file and argues that such disclosure, "should not be construed as a waiver of its right to assert that other materials contained in its claim file are protected by the attorney-client and work product privileges." (*Id.* at 199.) It is unclear what relief State Farm seeks through its discussion of these issues. It placed this discussion under the heading: "State Farm Is Entitled To Assert Privilege Objections During The Deposition." (*Id.*) (emphasis removed). To the extent that State Farm wants to withhold testimony on privilege grounds, Rule 30 provides a mechanism for doing so. Fed. R. Civ. P. 30(c)(2). To the extent that State Farm wants to withhold documents on privilege grounds, Rule 26 provides a mechanism for doing so. Fed. R. Civ. P. 26(b)(5). Elsewhere, in the conclusion sections of both of its briefs, State Farm asserts that it "is entitled to assert the applicable attorney-client and work product privileges to limit the scope of [Plaintiff]'s deposition to only those facts and evidence that are relevant to the claims and defenses." (DN 27, at PageID # 202; DN 31, at PageID # 285.) However, for purposes of limiting discovery, relevance and privilege are separate and unrelated issues.

State Farm did not raise any issue concerning privilege during the February 18, 2022 status conference, and Plaintiff did not respond to the privilege claims raised in State Farm's briefs. Additionally, State Farms does not indicate whether Plaintiff has objected to a particular privilege claim. For these reasons, any request for relief related to an issue of privilege is arguably procedurally defective. *See* Fed. R. Civ. P. 26(c)(1); L.R. 37.1. (*See also* DN 14, at PageID # 124.) Regardless, State Farm has not provided sufficient information for the Court to determine

that any discovery covered by the deposition notice is entitled to a protective order on privilege grounds.

When a party withholds information from discovery under a claim of privilege, Rule 26(b)(5) requires that the party: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). A party's "generalized statement that it could withhold privileged documents is completely insufficient under Fed. R. Civ. P. 26(b)(5)." *West v. Lake State Ry. Co.*, 321 F.R.D. 566, 568 (E.D. Mich. 2017). Rather, "[t]he rule requires the party to make an express claim of privilege claimed as to each document, and to 'describe the nature of the documents, communications, or tangible things not produced or disclosed—and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.' " *Id.* at 568–69 (citing Fed. R. Civ. P. 26(b)(5)(i)–(ii)). Here, the only reference State Farm makes to particular information it intends to withhold is "certain materials in the claim file generated after litigation . . . ." (DN 27, at PageID # 199.) State Farm provides no information about the contents of such material from which the Court could determine that a privilege applies. State Farm cites to *Alvey v. State Farm Fire & Cas. Co.*, in which this Court granted a protective order upon finding that portions of an insured's claim file were entitled to protection as work product. No. 5:17-CV-00023-TBR-LLK, 2018 WL 826379, at *5–6. (W.D. Ky. Feb. 9, 2018). In *Alvey*, the insurer had filed both a privilege log and a redacted version of the claims file in the record. *Id.* at *5 n.3. From the information in the record, the Court was able to determine that specific documents within the claims file were created in anticipation of litigation. *Id.* at *5–6. Here, the Court does not have the benefit of similar information that would inform a

determination.  Therefore, to the extent that State Farm seeks to withhold privileged information during its corporate deposition, it will be required to do so through the preexisting mechanisms provided under the Federal Rules.  If State Farm is aware of a significant privilege concern from which a genuine dispute between the Parties may arise, it should, in advance of the corporate deposition, raise the concern with Plaintiff, make a good faith effort to resolve any dispute, and request the Court's intervention to the extent that the Parties are unable to do so.

### E.  Effect of November 5, 2021 Stay of Discovery

In his initial complaint, among other things, Plaintiff pled: "The conduct of State Farm, its employees, servants, and agents, toward Plaintiff, in the handling of the Plaintiff's claims, and in their dealing with Plaintiff constitute violations of KRS 304.12-230."  (DN 1-1, at PageID # 10.) A claim under K.R.S.§ 304.12-230 is a KUCSPA bad faith claim.  *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 532 (6th Cir. 2006) (citing *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006)).  Upon removal of the case to this Court, on September 22, 2021, the Court ordered the Parties to meet and confer concerning case management issues and jointly file a proposed discovery plan.  (DN 6.)  Pursuant to that order, on October 27, 2021, the Parties filed their proposed discovery plan.  (DN 7.)  In the proposed plan, the Parties reported that they will need to take discovery on liability issues and that they "agree, however, that discovery should be stayed on the bad faith claim until the UM and BRB claims are resolved."  (*Id.* at PageID # 98.)  On November 5, 2021, the Court issued the scheduling order in this matter in which it granted the Parties' request for a stay of discovery:

> The Parties propose that discovery related to Plaintiff's bad faith claims be stayed pending a resolution of his other claims. (*Id.*, at PageID # 98.) The Court finds that the balance of interests weighs in favor of staying discovery related to the bad faith claim. *See White v. ABG Caulking Contrs., Inc.*, 2014 U.S. Dist. LEXIS 32413, *5 (W.D. Ky. Mar. 13, 2014) ("Trial courts have broad discretion and

> inherent power to stay discovery until preliminary questions that may dispose of a case are determined.") (quoting *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (internal citation omitted)). Therefore, all discovery related to Plaintiff's bad faith claim is **STAYED** pending further order of the Court.

(DN 14, at PageID # 121.)

After the Parties filed their proposed discovery plan, they filed a proposed agreed order for Plaintiff to amend his complaint, which was pending at the time when the scheduling order was issued. (DN 8.) Unlike the initial complaint, Plaintiff's then-proposed amended complaint filed with the Parties' agreed order did not include any reference to KUCSPA. (*See* DN 16.) In his subsequent motion to remand the case to state court, Plaintiff explained,

> at the time Defendant State Farm filed for removal, State Farm believed Plaintiff had filed a bad faith claim pursuant to KRS 304.12-230 (Kentucky Unfair Claims Settlement Practices Act or "UCSPA") in relation to the non-payment of uninsured motorist benefits. However, Plaintiff only filed a claim for attorney fees and interest pursuant to KRS 304.39 for untimely and/or non-payment of BRB benefits. On October 29, 2021, Plaintiff filed an Amended Complaint clarifying the claims as explained above. The parties filed an Agreed Order requesting leave to file Plaintiff's First Amended Complaint.

(DN 10, at PageID # 113.)

In summary, Plaintiff agreed to stay discovery related to bad faith despite his belief that his complaint raised no bad faith claim, yet he claims to be entitled to what would ordinarily be understood as bad faith discovery due to his quasi-bad faith claim under the MVRA. It is possible that his agreeing to the stay was simply a mistake or a concession to assure State Farm that he would not seek discovery related to any KUCSPA bad faith claim. Regardless there is no denying the discovery sought on the MVRA claims broaches the territory of bad faith discovery, and the rationale for the Court's stay of bad faith discovery may very well apply to discovery related to whether the denial of his PIP claim lacked a "reasonable foundation" under the MVRA.

"Federal district courts in Kentucky frequently sever the trials for contract and bad-faith claims . . . ." *C.A. Jones Mgmt. Group*, 2015 U.S. Dist. LEXIS 33430 at \*4 (citing *Brantley v. Safeco Ins. Co. of Am.*, 2011 U.S. Dist. LEXIS 138111 (W.D. Ky. 2011); *Hoskins v. Allstate Prop. & Cas. Co.*, 2006 U.S. Dist. LEXIS 80327 (E.D. Ky. 2006)).  This is because, "[i]f a bad-faith claimant cannot prevail on the coverage issue, her claim of bad-faith necessarily fails; accordingly, such cases lend themselves to bifurcation under Rule 42(b)." *Id.* (citations omitted).  Accordingly, severing bad faith claims from the underlying contractual claims generally will "avoid the expense of litigating issues that may never arise and will permit consideration of a single issue at a time, thus avoiding the introduction of potentially confusing evidence until necessary." *Id.* at \*5. Relatedly, "[a]s numerous courts have found in this context, staying discovery of the bad-faith claim pending resolution of the underlying contractual dispute would both prevent prejudice and further judicial economy." *Id.* at \*5–6 (citing *Brantley*, 2011 U.S. Dist. LEXIS 138111 at \*2; *Bruckner v. Sentinel Ins. Co. LTD*, 2011 U.S. Dist. LEXIS 13365, \*2 (E.D. Ky. 2011); *Secura Ins. Co. v. Gorsick*, 2008 U.S. Dist. LEXIS 3018, \*2 (W.D. Ky. 2008); *Pollard v. Wood*, 2006 U.S. Dist. LEXIS 13459, \*2-3 (E.D. Ky. 2006)).

These considerations support the Court's November 5, 2021 stay of bad faith discovery, and the Court sees no reason why Plaintiff should be permitted to circumvent the stay merely because the pertinent cause of action lacks the moniker of a "bad faith" claim.  However, there could be reasons why claims for unreasonable PIP benefits denials and types of bad faith claims should be treated similarly for purposes of determining relevant discovery but differently in the context of bifurcation, severance, and stay.  Accordingly, Plaintiff will be afforded an opportunity to explain why the discovery discussed in Part III.B. above should not be stayed consistent with

the Court's November 5, 2021 order pending a resolution of the merits of Plaintiff's contractual claims.

### IV.    ORDER

For the forgoing reasons,

IT IS HEREBY ORDERED as follows:

1.  The scope of State Farm's Rule 30(b)(6) deposition shall be limited to Deposition Topics and Document Requests consistent with this Memorandum Opinion and Order.

2.  On or before **July 22, 2022**, Plaintiff shall file a brief setting forth the reasons why the discovery discussed in Part III.B. of this Memorandum Opinion and Order should not be stayed.  Any response shall be filed by **July 29, 2022**.  No replies shall be permitted.

Colin H Lindsay, Magistrate Judge
United States District Court

June 30, 2022

cc:  Counsel of record