UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00563-GNS-CHL

ROBBIE WRIGHT                                                                                            PLAINTIFF

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY; and
UNKNOWN DEFENDANT                                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 55). The motion is ripe for adjudication. For the following reasons, the motion is **GRANTED IN PART**.

**I.      BACKGROUND**

Plaintiff Robbie Wright ("Wright") maintained an auto insurance policy with Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). (*See* Def.'s Mot. Summ. J. Ex. V, DN 55-23 [hereinafter Policy]). On either June 25 or June 26, 2020, Wright rented a Bird Scooter to commute home from work[1] and alleges that he was struck by a vehicle when crossing an intersection.[2] (Wright EUO 16:8-25, 39:15-24; Wright Dep. 46:3-9). The driver exited the vehicle, spoke with Wright, and ultimately called 911 from her phone. (Wright EUO 28:11-29:10). Wright spoke to someone he believed was a 911 dispatcher from the driver's phone, but

---

[1] While Wright initially indicated that the accident underlying this action occurred on Friday, June 26, he conceded in his examination under oath that it may have occurred on June 25. (*See* Wright Examination Under Oath 39:15-24, Mar. 3, 2021, DN 55-2 [hereinafter Wright EUO]).

[2] Notably, a medical record from his admission to the hospital following the collision indicates that his injuries resulted from "colliding with [a] stopped vehicle at low speed while riding a motorized scooter." (Def.'s Mem. Supp. Mot. Summ. J. Ex. C, at 1, DN 55-4). Wright denies that he told anyone at the hospital this. (Wright Dep. 69:4-7, June 26, 2022, DN 64-1).

1

Wright did not ask for the person's name or insurance information. (Wright EUO 29:17-30:22; Wright Dep. 53:20-54:1). At some point afterwards, the driver left the scene. (*See* Wright EUO 29:23-25). No emergency vehicle ever arrived. (Wright EUO 29:25-30:1).

Afterwards, Wright rode the scooter again to a payday loan business, mistakenly believing he had to pay his account. (Wright EUO 32:18-33:18; Wright Dep. 59:21-60:2). Employees at the payday loan business called Wright's sister, who picked Wright up and took him to the hospital. (Wright Dep. 60:2-11, 68:19-21). Wright subsequently received three surgeries on his leg—one on the night of the accident, another surgery nearly a month later, and a final surgery around a year later. (Wright Dep. 70:13-71:9). After his first surgery, he was released from the hospital after a "couple of days." (*See* Wright Dep. 70:8-12).

There is conflicting evidence as to whether Wright contacted his current counsel either a day or two after he was released from the hospital, or around four weeks later on July 23, 2020.[3] (*See* Wright Dep. 71:13-20; Pl.'s Resp. Def.'s 2d Interrog. ¶ 2, DN 55-13). It is undisputed that State Farm received notice of the accident on July 31, 2020. (*See* Def.'s Mem. Supp. Mot. Summ. J. 10, DN 55-1; Pl.'s Resp. Def.'s Mot. Summ. J. 7, DN 64). State Farm began investigating Wright's claim and indicated that it believed the claim may not be covered. (*See* Def.'s Mot. Summ. J. Ex. Q, at 1-2, DN 55-18).

Wright filed the instant suit in Jefferson Circuit Court (Kentucky), and State Farm removed it to this Court. (*See* Compl., DN 1-1; Notice Removal, DN 1). Wright filed an Amended Complaint seeking payment of uninsured motorist ("UM") or underinsured motorist ("UIM") benefits, PIP/basic reparation benefits, an 18% statutory penalty pursuant to KRS

---

[3] In his response, Wright states that he contacted counsel on July 23, 2020. (Pl.'s Resp. Def.'s Mot. Summ. J. 7).

304.38-210(2) for the delay in paying PIP benefits, and attorney's fees pursuant to KRS 304.39-220(1). (Am. Compl. 3-4, DN 16).

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support

3

of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

State Farm offers three grounds for summary judgment. First, it argues that all of Wright's claims must be dismissed because Wright failed to comply with the notice provisions in both the PIP and UM or UIM policies. (Def.'s Mem. Supp. Mot. Summ. J. 14-20). Next, State Farm contends that Wright has failed to establish entitlement to UM or UIM benefits. (Def.'s Mem. Supp. Mot. Summ. J. 20-24). Finally, State Farm asserts that Wright cannot be entitled to the 18% statutory penalty authorized by KRS 304.39-210(2) because State Farm had a reasonable foundation in delaying payment of PIP benefits. (Def.'s Mem. Supp. Mot. Summ. J. 25-32).

### A. The Policy's Notice Provisions

State Farm argues that by waiting thirty-six days to report the accident to State Farm, Wright failed to comply with three notice requirements in his policy. (Def.'s Mem. Supp. Mot. Summ. J. 14-18). First, a general notice provision requires that an insured "must give . . . notice of the accident or loss as soon as reasonably possible." (Policy (PageID # 543)). Next, two provisions are included in a section of the policy specifically related to no-fault or UM claims, one which requires notice "as soon as reasonably possible," and the other requires notice within thirty days. (Policy (PageID # 543-44)).

Typically, whether notice was timely is a question of fact for the jury. *S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 F. App'x 401, 408 (6th Cir. 2019) (citing *Falls City Plumbing Supply Co. v. Potomac Ins. Co.*, 237 S.W. 376, 378 (Ky. 1922)). Where a lapse of time is "so long as to be obviously [noncompliant] with the [policy]," however, judgment as a matter of law

4

can be appropriate. *See id.* (alterations in original) (quoting *Potomac Ins.*, 237 S.W. at 378); *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 803 (Ky. 1991). Untimely notice alone is insufficient to justify a denial of coverage; an insurer must also show that "it is reasonably probable that the insurance carrier suffered substantial prejudice from the delay in notice." *S. Fifth Towers*, 763 F. App'x at 408 (quoting *Jones*, 821 S.W.2d at 803).

It is undisputed that Wright gave State Farm notice of the accident thirty-six days after the date it occurred. (Def.'s Mem. Supp. Mot. Summ. J. 18; Pl.'s Resp. Def.'s Mot. Summ. J. 7).

1. *Timeliness*

State Farm insists that Wright's notice was untimely as a matter of law because he had ample time to give notice but waited for thirty-six days to do so. (Def.'s Mem. Supp. Mot. Summ. J. 18). Wright responds that thirty-six days was a reasonable amount of time because he had to spend three days in the hospital following the accident and underwent two surgeries on his injured leg. (Pl.'s Resp. Def.'s Mot. Summ. J. 7). Wright emphasizes that he expected his attorney to contact State Farm, asserting that he contacted counsel on July 23, within a month of the accident. (Pl.'s Resp. Def.'s Mot. Summ. J. 7). Wright also points out that he is a lay person, and it is reasonable for him to not be aware, until speaking with an attorney, that his automobile policy might cover an accident where he was riding a motorized scooter. (Pl.'s Resp. Def.'s Mot. Summ. J. 9).

Viewing the facts in the light most favorable to Wright, with respect to the two provisions that contain no specific deadlines, State Farm has failed to show that thirty-six days is so obviously noncompliant with the policy as to justify departure from the general rule that "the question whether the notice was given within a reasonable time is one for the jury." *Falls City Plumbing Supply*, 237 S.W. at 378.

With respect to the provision requiring notice within thirty days, Wright attempts to argue that his notice was not untimely because the time for notice only begins to run when a driver involved in an accident "remains unknown," as opposed to when the accident occurs. (Pl.'s Resp. Def.'s Mot. Summ. J. 7-8). Wright contends that even until August 5, 2020, it was not clear that the driver of the vehicle that he alleges hit him was unknown because her identity was still being investigated. (Pl.'s Resp. Def.'s Mot. Summ. J. 7-8). Wright offers no support for this interpretation of the policy. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. 7-8). As State Farm points out, to hold that a driver cannot be considered "unknown" simply because an investigation into his or her identity is ongoing runs the risk of generating substantial confusion about when an insured could file a UM claim. (*See* Def.'s Reply Mot. Summ. J. 5, DN 67). Therefore, this argument lacks merit.

Accordingly, there is no genuine issue of material fact that Wright was untimely in reporting to State Farm within the thirty days required by the "unknown driver" provision of the policy. Whether he failed to provide timely notice under the provisions requiring notice "as soon as reasonably possible" will remain an issue for the trier of fact.

### 2. *Reasonable Probability of Substantial Prejudice*

As explained above, with respect to Wright's failure to comply with the thirty-day notice requirement in Wright's UM policy, State Farm must demonstrate a reasonable probability of substantial prejudice resulted from that delay. Notably, since the policy allowed Wright thirty days to report the accident and he reported it in thirty-six, this issue is best framed as a six-day delay in notice as opposed to a thirty-six-day delay.

Importantly, an insurer cannot simply rely on the lack of notice as proof of prejudice. *Old Republic Ins. Co. v. Underwriters Safety & Claims, Inc.*, 306 F. App'x 250, 255 (6th Cir.

2009). Instead, on summary judgment, the insurer must show either "(1) that the outcome would have been more favorable if it had received timely notice of the claim; or (2) that the insurer was actually and substantially harmed by the delay in notice." *Metro. Direct Prop. & Cas. Ins. Co. v. Farmer*, No. 5:17-CV-40-KKC, 2019 WL 3412909, at *11 (E.D. Ky. July 29, 2019) (collecting cases). Summary judgment is rarely granted on this ground. *Id.* ("Courts in this jurisdiction considering whether an insurer has established substantial prejudice generally consider it an issue of fact not appropriate for summary judgment." (citation omitted)); *Jones*, 821 S.W.2d at 803 ("The issue is ripe for summary judgment only where the proof is conclusive . . . on this subject.").

State Farm points to the testimony of its representative Joe Kurzejeski, who explained that if Wright had reported the incident more quickly, "his recollection of the events, details, descriptions of other persons, the witness, would be more present on his mind versus when the EUO was taken on March 3, 2021." (Def.'s Mem. Supp. Mot. Summ. J. 18 (quoting Kurzejeski Dep. 51:15-18, Jan. 27, 2023, DN 55-20)). This argument is unpersuasive. State Farm scheduled Wright's Examination Under Oath in January 2021, and after a delay, it was ultimately conducted in March 2021, nearly seven months after the accident. (Kurzejeski Dep. 30:8-12). State Farm offers no explanation for how such a remote event could have been impacted by earlier reporting. Viewing the facts in the light most favorable to Wright, the fact that he told State Farm he was hit by an unknown driver six days after the deadline for reporting the incident would have had minimal impact on his recollection when he appeared for his examination under oath seven months later.

State Farm also argues that if Wright had reported the incident more promptly, it could have located more accurate information about the accident by searching for witnesses or footage

to determine what happened to Wright. (Def.'s Mem. Supp. Mot. Summ. J. 18). This bare assertion that the investigation may have been more fruitful if begun earlier falls far short of demonstrating conclusive evidence of substantial prejudice. For example, in *Metropolitan Direct Property & Casualty Insurance Company v. Farmer*, a sister court left the issue of prejudice to the trier of fact where there had been a seven-month delay in reporting. *See Farmer*, 2019 WL 3412909, at *10-16. That court, and this one, located only a single case granting summary judgment on the grounds of substantial prejudice, *South Fifth Towers, LLC v. Aspen Insurance UK, Ltd.*, where the insured did not notify the insurer of the insured building's severe water damage until after demolition of an entire floor had already begun. *S. Fifth Towers*, 763 F. App'x at 408; *see Farmer*, 2019 WL 3412909, at *11. State Farm has presented no similar complications. Accordingly, a genuine issue of fact remains as to whether Wright's failure to comply with the thirty-day notice provision created a reasonable probability of substantial prejudice to State Farm.

B. **Conditions Precedent to Coverage**

State Farm also argues that Wright failed to satisfy a condition precedent to coverage. (Def.'s Mem. Supp. Mot. Summ. J. 17-20). State Farm contends that, unlike with untimely notice, denial of Wright's claims on this ground requires no showing of prejudice, citing *State Farm Mutual Automobile Insurance Co. v. Adams*, 526 S.W.3d 63 (Ky. 2017). (Def.'s Mem. Supp. Mot. Summ. J. 17). In *Adams*, the Kentucky Supreme Court affirmed a trial court's grant of summary judgment in favor of an insurer because the plaintiffs, who were passengers in the insured's car, refused to comply with the insurer's investigation of the accident. *Adams*, 526 S.W.3d at 64-65, 67-68. State Farm argues that Wright failed to comply with a condition precedent of coverage by failing to provide the names of the other individuals involved in the

8

accident. (Def.'s Mem. Supp. Mot. Summ. J. 19). State Farm has not presented any evidence, however, that Wright is refusing to provide this information. Indeed, it is undisputed that Wright never learned the name of the driver who allegedly hit him. State Farm's attempt to draw parallels between Wright's behavior and the behavior of the plaintiffs in *Adams* are unavailing. There is no evidence that Wright has refused to provide to State Farm any information available to him. Accordingly, this argument is rejected.

C. **UM/ UIM Policy Provisions**

State Farm asserts in the alternative that summary judgment is appropriate as to Wright's claims for UM/UIM coverage because Wright failed to satisfy his burden of proving that the unknown driver was uninsured. (Def.'s Mem. Supp. Mot. Summ. J. 20-24).

"Under Kentucky law, the party seeking to establish coverage bears the burden of establishing that the incident at issue was within the scope of the policy." *Secura Ins. Co. v. Gray Const., Inc.*, 717 F. Supp. 2d 710 (W.D. Ky. 2010) (quoting *N. Am. Accident Ins. Co. v. White*, 80 S.W.2d 577, 578 (Ky. 1935)), *modified on clarification* (July 12, 2010). To satisfy this burden in the context of an uninsured motorist, a claimant need only provide sufficient proof to "convince the trier of facts that all reasonable efforts have been made to ascertain the existence of an applicable policy and that such efforts have proven fruitless." *Motorists Mut. Ins. Co. v. Hunt*, 549 S.W.2d 845, 847 (Ky. App. 1977) (quoting *Merchants Mut. Ins. Co. v. Schmid*, 288 N.Y.S.2d 822, 825 (Sup. Ct. 1968).

Wright does not deny that he bears the burden of proving applicable coverage but points to genuine issues of material fact precluding summary judgment on this ground. (Pl.'s Resp. Def.'s Mot. Summ. J. 10-14). Wright asserts that discrepancies in his own testimony about what occurred following the accident create a genuine issue of material fact about whether he made

9

reasonable efforts to acquire the unknown driver's insurance information. (Pl.'s Resp. Def.'s Mot. Summ. J. 12).

In *Motorist Mutual Insurance Co. v. Hunt*, the Kentucky Court of Appeals affirmed a judgment against an insurer where the plaintiff's only proof that the other driver involved in the accident was uninsured was the plaintiff's testimony that the driver had told him so after the accident. *Hunt*, 549 S.W.2d at 846. In seeking to show that he met his burden, Wright attempts to distinguish *Hunt* where the identity of the defendant was known but he could not be located for service, whereas in this case, the identity of the driver who hit Wright remains unknown. (Pl.'s Resp. Def.'s Mot. Summ. J. 12); *see Hunt*, 549 S.W.2d at 846. In *Hunt*, the insured testified that the at-fault driver said he was uninsured, which statement was admissible as a statement against interest. *See id.* at 847. In the present case, however, there is no indication that the unknown driver made such a statement to Wright that she was uninsured. Regardless, the fact remains that the identity of the at-fault driver is unknown. Since Wright has the burden of proving the unknown driver was uninsured, Wright cannot meet his burden in this respect because the identity is unknown to him. Accordingly, State Farm's summary judgment motion is granted as to Wright's claim for UM/UIM benefits.

D. **Statutory Penalty**

Finally, State Farm moves for summary judgment on Plaintiff's claim to the extent it seeks an 18% interest rate for failure to pay PIP benefits. (Def.'s Mem. Supp. Mot. Summ. J. 25-32).

KRS 304.39-210(2) creates a 12% interest rate on overdue PIP payments, which is increased to 18% where the delay "was without reasonable foundation." KRS 304.39-210(2). Earlier in this action, the parties disputed whether discovery on this issue should be stayed. (*See*

Order 3-4, DN 50). Wright argued that no stay was necessary, but State Farm argued in favor of the stay, stating that it would "likely have to produce two to three representatives to cover all the topics identified by Wright . . . ." (Def.'s Resp. Mem. Op. & Order 5-6, DN 42). The Magistrate Judge found this reasoning persuasive in granting the stay. (*See* Order 3-4).

Wright responds that the Magistrate Judge's Order renders State Farm's argument premature. (Pl.'s Resp. Def.'s Mot. Summ. J. 13). State Farm argues that Wright has taken sufficient discovery to address the issue and that, to the extent Wright needs additional discovery, he failed to take advantage of Fed. R. Civ. P. 56(d). (Def.'s Reply Mot. Summ. J. 10-13).

Given that the Magistrate Judge specifically stayed discovery on this claim based on State Farm's content that it would need to produce multiple deponents on the issue, State Farm cannot now seek summary judgment by arguing that such discovery would be superfluous. Consistent with the Magistrate Judge's Order, State Farm's motion on this claim is premature. The parties may return to this issue, if necessary, upon resolution of Wright's remaining claim for PIP benefits. Accordingly, State Farm's motion is denied as to this issue.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 55) is **GRANTED IN PART**. Plaintiff's claim for payment of uninsured or underinsured motorist benefits is **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

September 11, 2024

cc: counsel of record

11